# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| BRITTANY GLENN, <br><br> Plaintiff, <br><br> v. <br><br> GEORGIA DEPARTMENT OF CORRECTIONS, <br><br> Defendant. | Civil Action No.: <br><br> 5:21-cv-00171 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Brittany Glenn and brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Plaintiff alleges that Defendant Georgia Department of Corrections subjected Plaintiff to discrimination based on sex, and then subjected her to retaliation after she engaged in protected activities, respectfully showing the Court as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 & 1343 and the enforcement provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5.

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff sought employment in, and the events underlying this action occurred, in Jackson, Butts County, Georgia, which is located within this judicial district.

## PARTIES

3.

Plaintiff Brittany Glenn (hereinafter, "Plaintiff" or "Dixson") is a citizen of the United States and a resident of Georgia. At all times relevant to this suit, Ms. Glenn was seeking employment with Defendant Georgia Department of Corrections.

4.

At all relevant times, Ms. Glenn was considered a covered, non-exempt individual under Title VII of the Civil Rights Act.

5.

Defendant Georgia Department of Corrections (hereinafter, "Defendant") is a department and political subdivision of the State of Georgia. Defendant may be served by delivering a copy of the Summons and Complaint to its Commissioner, Timothy C. Ward, at Defendant's headquarters, located at 7 Martin Luther King, Jr. Drive, Suite 543, Atlanta, Fulton County, Georgia 30334.

6.

Defendant has employed far in excess of fifteen employees in every week of 2019 and preceding years and is otherwise a covered entity and employer within the meaning of Title VII of the Civil Rights Act.

## STATEMENT OF FACTS

7.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 6, as if the same were set forth herein.

8.

Before she applied for a position with Defendant, Ms. Glenn had experience working in the areas of both law enforcement and corrections.

9.

Ms. Glenn learned that Defendant was seeking applications for experienced corrections officers at its Special Management Unit (hereinafter, "SMU"), which is located near Defendant's Diagnostic and Classification State Prison in Jackson, Georgia.

10.

The SMU is distinct from Defendant's Diagnostic and Classification State Prison, and the SMU houses inmates who are subject to maximum security and often held in solitary confinement.

11.

Because of the types of inmates housed in the SMU, Defendant generally seeks to employ more experienced correctional officers in the SMU, and they are compensated at rates higher than correctional officers working in Defendant's non-specialized facilities.

12.

Ms. Glenn was employed with the Monroe County Sheriff's Office at the time of her application, but she became interested in working for Defendant at the SMU because of the experience that she would gain in this unit and the relatively higher rates of compensation.

13.

In December 2018, Ms. Glenn submitted an application to Defendant for the position of Close Secure Mission Correctional Officer at the SMU.

14.

According to Defendant's job listing, the qualifications for the position were a high school diploma or GED and any combination of training and experience that would enable the applicant to meet the minimum training standards of the Georgia Peace Officers Standards and Training Counsel ("POST").

15.

Ms. Glenn possessed all of the qualifications for the position for which she applied.

16.

None of Defendant's announcements for the position included any requirement concerning the sex and/or gender of those applying for the position.

17.

At the time of Plaintiff's applicant, Defendant actively employed female correctional officers in the SMU.

18.

After Ms. Glenn prepared her application for the position and she contacted the superintendent of the SMU, Michael Cannon (hereinafter, "Superintendent Cannon"). Superintendent Cannon explained that the SMU did not have its own personnel department, so Ms. Glenn would have to submit her application to and follow up with representatives with the Diagnostic and Classification State Prison, who are also responsible for hiring in the SMU.

19.

Ms. Glenn also participated in an interview with Superintendent Cannon for the position. After the interview, Superintendent Cannon told Ms. Glenn that she was qualified and that "if you apply for the position, the job is yours."

20.

Based on Superintendent Cannon's remarks, Ms. Glen submitted her application to the personnel department with the Diagnostic and Classification State Prison.

21.

Due to the Superintendent's remarks, Ms. Glenn also resigned from her position with the Monroe County Sheriff's Office so she could make arrangements to complete the other requirements for her application, onboard, and begin working for Defendant.

22.

In January 2019, Ms. Glenn contacted Lt. Jalaludin Douglas (hereafter, "Lt. Douglas") in the personnel department at the Diagnostic and Classification State Prison.  Lt. Douglas told Ms. Glenn that, in order to meet the hiring requirements, she would need to undergo a physical, fingerprinting, and complete a new hire packet.

23.

Soon thereafter, Ms. Glenn completed these remaining new hire requirements.

24.

Upon completion of these requirements, Ms. Glenn attempted to contact Lt. Douglas or others in the personnel department, but despite numerous emails and voicemails, Ms. Glenn was unable to make contact with anyone.

25.

On March 14, 2019, Ms. Glenn made contact with another employee in the personnel department, Arlene Roberts.  Ms. Roberts told Ms. Glenn that her application to be a correctional officer would be accepted, but that Ms. Roberts would have to check with the Warden of the

Diagnostic and Classification State Prison, Benjamin Ford, to see if Ms. Glenn would be assigned to work at the SMU.

26.

The next day, Ms. Glenn spoke with Ms. Roberts once again. Ms. Roberts told Ms. Glenn that she would not be getting the position to work at the SMU.

27.

During that conversation, Ms. Roberts said that Warden Ford had directed the personnel department not to hire any females for, or assign any female, work as correctional officers in the SMU.

28.

At that time, Defendant did offer Ms. Glenn a position to work as a correctional officer in the Diagnostic and Classification State Prison.

29.

However, Ms. Glenn did not accept the position that she was offered because that was neither the position for which Ms. Glenn applied nor had she ever been interested in a position other than the one that she applied for in the SMU.

30.

On March 26, 2019, after Defendant rejected Ms. Glenn's application for the position, Defendant posted the job opening in the SMU once again. As with Defendant's prior listings, there was no reference to sex and/or gender in the announcement.

31.

On May 6, 2019, Ms. Glenn submitted a Charge of Discrimination to the EEOC, alleging that Defendant subjected her to discrimination based on sex in violation of Title VII of the Civil Rights Act.

32.

On or about June 1, 2019, Ms. Glenn learned that Defendant had hired several new female employees to work as correctional officers in the SMU.

33.

Ms. Glenn later learned that these new female employees had applied to work for Defendant around the same time as Ms. Glenn submitted her application.  Just as it did with Ms. Glenn, Defendant initially rejected the new female employee's applications.

34.

After Defendant received Ms. Glenn's Charge of Discrimination in May 2019, it made contact with previously rejected female applicants, and Defendant offered the applicants the positions for which they initially applied.

35.

However, unlike the other individuals who had who had initially been rejected, Defendant failed and refused to offer Ms. Glenn a position to work in the SMU.

36.

Defendant refused to make an offer to Ms. Glenn because she had filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

Procedural/Administrative Background

37.

On or about May 6, 2019, Ms. Glenn submitted her Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC"), alleging that she had been subjected to discrimination based sex in violation of Title VII of the Civil Rights Act. The EEOC assigned Ms. Glenn Charge Number 410-2019-05105.

38.

Defendant had notice of Ms. Glenn's Charge of Discrimination, participated in the proceedings before the EEOC, and was represented by counsel during said proceedings.

39.

During the EEOC investigation, Ms. Glenn learned Defendant had initially rejected the applications submitted by the newly hired female employees in the SMU.

40.

On February 5, 2020, Ms. Glenn submitted an amended Charge of Discrimination, in which she added a claim for retaliation in violation of Title VII of the Civil Rights Act.

41.

The EEOC ultimately issued a Determination on August 20, 2020, finding that there was reasonable cause to conclude that Ms. Glenn was discriminated against because of her sex in violation of Title VII of the Civil Rights Act

42.

The EEOC subsequently invited the parties to participate in conciliation of Ms. Glenn's discrimination claims. On December 8, 2020, the EEOC issued notice to the parties that the conciliation had be unsuccessful.

43.

On February 19, 2021, the Department of Justice issued its Notice of Right to Sue, which Ms. Glenn, through counsel, received on the same day.

44.

Ms. Glenn has exhausted her administrative remedies as to her Charge of Discrimination, and she is filing the instant action within ninety days of her receipt of the Department of Justice's Notice of Right to Sue.

## COUNT I:
## DISCRIMINATION BASED ON SEX
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

45.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 44, as if the same were set forth herein.

46.

Under Title VII of the Civil Rights Act, it is unlawful for an employer fail or refuse to hire an individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privilege of employment, because of such individual's sex.  42 U.S.C. § 2000e-2(a).

47.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to limit, segregate, or classify applicant for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's sex.  42 U.S.C. § 2000e-2(b).

48.

Plaintiff is female, making her a member of a protected class.

49.

Plaintiff met and exceeded the qualifications for the position of a correctional officer within Defendant's Special Management Unit.

50.

After reviewing Plaintiff's application and conducting an interview, the individual in charge of the Special Management Unit told Plaintiff that she was qualified for the position, and if she applied for the position, it was hers.

51.

As alleged herein, Plaintiff applied for the position as a correctional officer in Defendant's Special Management Unit.

52.

Defendant rejected Plaintiff's application for correctional officer in Defendant's Special Management Unit.

53.

Defendant told Plaintiff that her application was being rejected because she was female.

54.

There were no requirements or qualifications related to the position at issue concerning an applicant's sex and/or gender.

55.

Instead of selecting Plaintiff's application, Defendant not only held the position open, but hired applicants who were not female.

56.

Defendant's policy of not hiring or assigning female applicants to work in the Special Management United was not reasonably necessary to the normal operation of Defendant's business and/or enterprise.

57.

Defendant will be unable to present any evidence of a legitimate nondiscriminatory reason for failing and refusing to consider Plaintiff's application for which she applied.

58.

Plaintiff will prove that the Defendant's stated reasons are pretextual and Defendant's actions were indeed motivated by Plaintiff's sex.

59.

Plaintiff has been injured by Defendant's discrimination based on sex against her, and she is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay including fringe benefits, front pay, injunctive relief, compensatory and punitive damages in the amount of not less than $300,000.00, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT II:
## RETALIATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

60.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 44, as if the same were set forth herein.

61.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to retaliate against an employee because she has filed a charge or opposed any unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a).

62.

After Defendant rejected her application explicitly because of her sex, Plaintiff believed in good faith that she had been subjected to unlawful discrimination based on her sex.

63.

On May 6, 2019, Plaintiff submitted her Charge of Discrimination to the Equal Employment Opportunity Commission, alleging that Defendant had discriminated against her because of her sex.

64.

Defendant received a copy of Plaintiff's Charge of Discrimination soon thereafter.

65.

On or about June 1, 2019, Plaintiff became aware that Defendant had hired new female employees for same position that Plaintiff had applied, but that Defendant rejected.

66.

Plaintiff later learned that the new female employees had previously submitted an application for the same position as Plaintiff, and like Plaintiff, their applications had been initially rejected because of their sex.

67.

Defendant refused to offer Plaintiff a position for which she had previously been rejected for the sole reason that she had opposed Defendant's discriminator practices and filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

68.

By opposing Defendant's unlawful employment practices, including through her filing of a Charge of Discrimination, Plaintiff was engaged in activities protected by Title VII of the Civil Rights Act.

69.

As alleged herein, Defendant reconsidered applications that it had previously rejected from female applicants.

70.

However, Defendant refused to reconsider Plaintiff's rejected application because Plaintiff had engaged in protected activities.

71.

Defendant will be unable to present any evidence of a legitimate nonretaliatory reason for failing and refusing to reconsider Plaintiff's application for which she applied.

72.

Plaintiff will prove that the Defendant's stated reasons are pretextual and Defendant's actions were indeed motivated by retaliation.

73.

Plaintiff has been injured by Defendant's retaliation against her, and she is entitled to all damages allowed under Title VII of the Civil Rights Act, including back pay including fringe

benefits, front pay, injunctive relief, compensatory and punitive damages in the amount of not less than $300,000.00, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brittany Glenn respectfully prays for the following relief:

1)   That Summons and Process be issued to Defendant Georgia Department of Corrections, and that said Defendant be served as provided by law;

2)   That this matter be tried before a jury;

3)   That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for discrimination based on sex, and grant Plaintiff all relief allowable Title VII of the Civil Rights Act;

4)   That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for retaliation, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act; and,

5)   For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 17th day of May, 2021.

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
jmm@cooperbarton.com

KENNETH E. BARTON III
Georgia Bar No. 301171
JOHN M. MCCALL
Georgia Bar No. 778954
*Attorneys for Plaintiff*